COMMONWEALTH vs. JORGE ROSADILLA-GONZALEZ.

Suffolk.   March 15, 1985. — July 22, 1985.

Present: WARNER, ROSE, & FINE, JJ.

*Practice, Criminal,* Assistance of counsel, Judicial discretion, Sentence, Comment by counsel. *Evidence,* Cross-examination.

At the trial of indictments charging assault and battery by means of a dangerous weapon, assault with intent to murder, and armed robbery, the defendant was not denied effective assistance of counsel as a result of counsel's choosing as a defense the position that the defendant did not stab the victim, even though there was strong evidence to justify the jury's reaching a contrary conclusion, as a result of counsel's arguing provocation to the jury and emphasizing the weakness of the evidence on the robbery charge rather than focusing only on such facts as would tend to show the defendant not guilty on any of the charges, or as a result of certain remarks respecting the national origin of the defendant and the victim made by counsel during closing argument. [409-411]

The record of the trial of a criminal case did not support the defendant's contentions that the judge improperly restricted cross-examination of the victim, that the judge refused to give a limiting instruction respecting prior inconsistent statements, and that the judge refused to caution the victim against unresponsive answers or to strike such of his non sequiturs as came before the jury. [412-414]

The judge in a criminal case did not abuse her discretion by denying the defendant's request for a presentence report. [414]

The record in a criminal case did not support the defendant's contention that the judge in sentencing the defendant had improperly relied on two Cuban criminal convictions of questionable validity, which the prosecutor had offered at the sentencing hearing, and on the prosecutor's unfounded remarks respecting the defendant's involvement with drugs. [414-415]

The judge in a criminal case was not required to appoint an interpreter for the defendant's sentencing hearing, where the defendant understood English and was able to respond to questions intelligently although he had testified through an interpreter during part of the trial. [415]

The judge in a criminal trial did not abuse her discretion in forbidding the defendant at the sentencing hearing to speak on his own behalf after his attorney had given a presentation that the defendant considered inadequate. [415-416]

There was no merit to a criminal defendant's contention that defense coun-
sel's presentation at the sentencing hearing amounted to ineffective as-
sistance of counsel. [416-417]

INDICTMENTS found and returned in the Superior Court De-
partment on February 11, 1983.

The cases were tried before *Sandra L. Hamlin,* J.

*Adah Rose Bitterbaum (Thomas Hoffman* with her) for the
defendant.

*Robert N. Tochka,* Assistant District Attorney, for the Com-
monwealth.

ROSE, J. A jury returned verdicts of guilty on separate indict-
ments charging the defendant with assault and battery by means
of a dangerous weapon, assault with intent to murder, and
armed robbery. On appeal, the defendant complains of pros-
ecutorial misconduct, ineffective assistance of counsel and er-
roneous rulings or abuses of discretion on the trial judge's part.
We affirm all three judgments.

Both the defendant and the victim had been "boat people,"
Cuban nationals permitted to enter the United States. The de-
fendant had been in prison in Cuba; the victim's past was not
revealed at trial, beyond the fact that he had been a farmer.
Both men worked at the Suffolk Downs race track.

There was evidence that on January 12, 1983, the victim
had cashed his paycheck and that the defendant was complain-
ing of pecuniary embarrassment. Some time that morning, the
defendant and the victim quarrelled over the defendant's per-
formance of a task. The victim's employer overheard the de-
fendant threaten: "I'm going to get the little Cuban tonight."
Later, the defendant invited the victim home for dinner, to be
followed by a movie in Boston. They left the track together
at approximately 6:00 P.M.

There was testimony that on the way to the defendant's
home the victim and the defendant stopped at a liquor store,
where the defendant (who spoke English, the victim did not)
purchased a pint of vodka or gin, some cola and some cigarettes.
The victim gave him ten dollars or so to make the purchase,

and, later, another twenty dollars to defray the expense of the trip to the movies.

The defendant, his girlfriend, and the victim had drinks and dinner at the defendant's apartment and then departed for Boston. Before they left the house, the victim saw the defendant slip a steak knife into his sock. The defendant explained to the victim that Boston was filled with robbers against whom protection was necessary.[1]

The threesome did not see a movie that night. Instead, they wandered around the Combat Zone and eventually ended up, between 9:00 P.M. and 9:30 P.M., in the lounge of the Benihana Restaurant on Stuart Street, where they ordered one or two rounds of drinks. The bartender testified that none of them appeared drunk. His opportunity to make this observation was good because they were the only patrons in the lounge area.

The testimony diverged on what happened next. The bartender testified that he went into a storage area. When he returned, minutes later, only the victim remained; he was slumped over the table and bleeding, and he named the defendant as his attacker. The defendant and his girl friend testified that they left the bar, without injuring the victim, when he made unwelcome advances to the girl friend. The victim testified that the defendant, without reason, stabbed him in the neck with a knife, robbed him, but replaced twenty-two dollars, then grabbed his girl friend and fled.

1. *The Trial.*

(a) The standard under which we review claims of ineffective assistance of counsel is articulated in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We engage in "a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer — [that] has likely deprived the defendant of an otherwise available, substantial ground of defense." In

---

[1] A box of steak knives taken from the defendant's apartment, missing one knife, was admitted in evidence at trial.

so examining a case, we bear in mind that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Strickland* v. *Washington,* 466 U.S. 668, 693, reh'g denied, 467 U.S. 1267 (1984).

The defendant first accuses his lawyer[2] of a gross error of judgment in embracing as a defense the position that the defendant did not stab the victim when the evidence tended strongly to justify the jury's reaching the contrary conclusion. However, in the absence of a properly supported claim that trial counsel forced the defendant to plead not guilty, we must assume that the defendant freely chose to deny his guilt on all of the indictments. This being so, the defendant may not tax his lawyer with the consequences of what turned out to be a misjudgment on the defendant's part. An ineffective assistance claim is supported by a record that discloses the destruction of existing defenses, not an attorney's failure to manufacture a defense over the defendant's objection, or contrary to the truth as the defendant sees it.

The defendant's next complaint is that his lawyer left him denuded of a defense, see *Commonwealth* v. *Street,* 388 Mass. 281, 287 (1983), by arguing provocation to the jury and emphasizing the thinness of proof of the defendant's attempt to rob the victim rather than focusing only on such facts as would tend to show the defendant to be not guilty of any of the charges. We note first that counsel presented those arguments as hypotheticals for the jury to consider *if* they should decide beyond a reasonable doubt that the defendant had stabbed the victim, a decision that the defendant has already conceded was probably inevitable.

It is plain to us that, when the time came to argue to the jury, counsel had concluded that all he could do was ask them to find his client not guilty on the armed robbery indictment and endeavor to reduce (by virtue of lack of deliberate premeditation) assault with intent to murder to assault with intent to kill. "Counsel's strategy failed, but we are not on that account

---

[2] We refer here and *infra* to trial counsel, not appellate counsel.

to say that it was impermissible." *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 13 (1973).

During his closing statement, trial counsel developed the hypothesis that the defendant had stabbed the victim because he was enraged at the victim's conduct toward his girl friend. The victim, counsel suggested, could have contrived the robbery story because he could not bring himself to admit to the unbecoming conduct that in reality provoked the attack. To lend additional plausibility to this theory, counsel noted that in a Cuban cultural environment, such conduct toward an "attached" woman is not only frowned upon, but is viewed as an offensive and disrespectful form of behavior, more so than in this country.

The defendant contends that those remarks, and others in a similar vein, "appeal[ed] to prejudice based on national origin, and thus '[swept] jurors beyond a fair and calm consideration of the evidence.'" *Commonwealth* v. *Graziano,* 368 Mass. 325, 332 (1975), quoting from *Commonwealth* v. *Perry,* 254 Mass. 520, 531 (1926). The appeal of those remarks plainly was to the jury's sympathy toward a "wronged man" and to their common understanding that a certain act will give rise to different degrees of offense or embarrassment in different cultures.[3] Counsel's strategy did not create unfair prejudice to the defendant.

---

[3] The defendant advances similar arguments about statements made by the prosecutor and defense counsel at his sentencing hearing. For the foregoing reasons, we determine that those statements were not prejudicial.

In a related argument, the defendant disputes the logic of counsel's arguing provocation in his closing statement without developing that defense during testimony. The transcript belies the claim that the victim's allegedly licentious conduct and the defendant's ire were not persistently brought to the jury's attention.

In passing, and without citing any cases, the defendant also contends that lascivious conduct toward a girl friend is insufficient provocation as matter of law. We infer from this the claim that evidence that the defendant was upset by the victim's behavior merely tended to reinforce in the jury's minds the theory that the defendant was hotheaded, thus further undermining the case for the defense. The judge characterized the question of provocation as one of fact for the jury; we agree with her characterization.

(b) Many of the defendant's grievances concerning the trial judge's rulings are founded on the mistaken impression that we evaluate the judge's decisions only in light of the partisan abridgement of the transcript that the defendant has presented in his brief. A prime example of this misconception is the defendant's assertion that the judge erred in interrupting cross-examination of the victim for two days. However, the complete transcript reveals that the month was January, a snowstorm threatened, and that the victim was partially paralyzed and still in a wheelchair by reason of the stabbing. In the circumstances it was not an abuse of discretion to interrupt the victim's testimony.

The defendant's remaining complaints respecting the judge's rulings focus on the alleged denial of his right to confront witnesses, especially the victim. "Reasonable cross-examination for the purpose of showing falsity of other testimony of the witness or bias or prejudice on his part is a matter of right." *Commonwealth* v. *Russ,* 232 Mass. 58, 79 (1919). A denial of this right is the denial of the constitutional right to confront witnesses. See *Commonwealth* v. *Bohannon,* 376 Mass. 90, 94 (1978). Defense counsel's cross-examination of the victim was directed at establishing that for three weeks after the stabbing the victim made no complaint of robbery, and did complain only after he learned that some of the cash he thought he had was missing.

To make the robbery charge appear as a recent fabrication, defense counsel introduced the testimony of hospital personnel and police investigators and the reports they wrote between the time of the stabbing and the time the victim made robbery accusations. These reports made no mention of a robbery. All those witnesses testified; their reports were admitted in evidence and were available to the jury during their deliberations. During his closing statement counsel forcefully emphasized the inconsistencies in the victim's testimony. "[T]he courts of this Commonwealth have recognized that [the right to cross-examine witnesses] is not necessarily infringed by curbing inquiry where the matters sought to be elicited have been sufficiently brought to the attention of the trier of fact through other

questioning or other means." *Commonwealth* v. *Walker,* 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976). On appeal, however, the defendant, pointing to only two places in the transcript, argues that the judge repeatedly thwarted his effort to cross-examine the victim on his prior inconsistent statements.

In the first instance trial counsel asked the victim: "Did you tell Detective Ross that the reason you were going to Boston . . . was to find a girl, because you hadn't had a woman in quite a while"? The victim said no. When counsel endeavored to impeach this testimony by questioning the victim on the facts contained in a police report, the prosecutor objected on the ground that the statements in that report were translations of what the victim actually said, in Spanish, to an interpreter. The judge sustained the objection. Whether her ruling was correct is immaterial. Defense counsel subsequently cross-examined the victim with that report. In the second instance, the defendant directs our attention to a voir dire concerning how defense counsel planned to refresh the victim's recollection with a police report. After the voir dire the judge apparently ruled in the defendant's favor, because defense counsel asked the victim the same questions when he resumed cross-examination.

The presence in the record of an extensive and correct charge on the law concerning the use of prior inconsistent statements for impeachment purposes belies the defendant's contention that the judge "refused to give the jury a limiting instruction on the use of prior inconsistent statements." The judge was not obliged to tell the jury which exhibits or testimony were prior inconsistent statement evidence. See *Wadsworth* v. *Boston Gas Co.,* 352 Mass. 86, 93-94 (1967); *Goldman* v. *Mahony,* 354 Mass. 705, 711 (1968); *Kaltsas* v. *Duralite Co.,* 4 Mass. App. Ct. 634, 638 (1976).

The other objection the defendant makes to the judge's rulings is more generalized: that she repeatedly cut off cross-examination, refused to caution the victim against unresponsive answers or to strike such of his non sequiturs as came before the jury. All of those contentions are without basis in the

record.[4] The judge frequently cautioned the witness and asked that both lawyers also caution him and phrase their questions so as not to confuse him. She struck plainly unresponsive answers upon defense counsel's request and invited defense counsel to ask additional clarifying questions or repeat questions when the victim gave vague answers. The judge appropriately exercised her discretion to exclude unnecessarily confusing and obviously repetitive questions. *Commonwealth* v. *Rahilly,* 10 Mass. App. Ct. 911, 912 (1980).

2. *Sentencing Hearing.*

(a) At the hearing, defense counsel requested that the judge order a presentence report. The judge reviewed the material already available to her and determined that such a report would be unnecessary. The judge had the opportunity to observe the defendant at trial, and she had already been apprised of many aspects of his background. The defendant had no previous criminal record in this country, denied having a drug or alcohol problem, and neither suggested at the hearing nor otherwise brought to the judge's or this court's attention what, if any, mitigating factors would likely appear in such a report. See Mass.R.Crim.P. 28(d)(2), 378 Mass. 899 (1979). In the circumstances, no abuse of discretion appears in the judge's refusal to order a report. See *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 618-620 (1981).

(b) There is nothing in the record to show that defense counsel provided the prosecutor with the defendant's Cuban

---

[4] The victim, by virtue of his injury, was partially paralyzed and in a wheelchair. He spoke no English and testified through an interpreter; he had received only a second grade education. He tended to give rambling, excited, and occasionally completely unresponsive answers. "The testimonial discipline of responding to questions with a simple 'Yes' or 'No' or other limited answer without further explanation, was clearly a most unnatural style of discourse for [him]." *Commonwealth* v. *Festa,* 369 Mass. 419, 428 (1976). In short, though the victim was a competent witness, he was not an ideal one. Then too, defense counsel was bound to be frustrated by the victim's poor recollection of anything he said at the hospital, where he was taking medication for pain, and, initially at least, upset and disoriented. His frequent professions that he did not remember tended themselves to impede effective cross-examination.

convictions.[5] Further, there is nothing in the record to indicate that the judge relied on these convictions in her sentencing decision. The defendant's "[c]onclusory assertions are insufficient to meet this burden." *Commonwealth* v. *Guerro,* 14 Mass. App. Ct. 743, 746 (1982).

(c) Because the judge did not appoint an interpreter for his sentencing hearing, the defendant claims that he was denied his common law right to be meaningfully "present" at that hearing. See *Katz* v. *Commonwealth,* 379 Mass. 305, 315 (1979). Rule 41 of Mass.R.Crim.P., 378 Mass. 918 (1979), reads, in part, "The judge may appoint an interpreter . . . if justice so requires." The defendant began his trial testimony in English and understood and responded intelligently to questions put to him in that language. After a time, the judge required him to testify through an interpreter only because his accent made his answers difficult for the reporter and jury to understand. In the circumstances, justice did not oblige the judge to appoint an interpreter.

(d) The defendant also suggests that the judge's forbidding him to speak on his own behalf at sentencing was an abuse of discretion because his lawyer gave an inadequate presentation of mitigating factors. The exercise of discretion of the sentencing judge to permit or forbid "allocution" by a defendant cannot be evaluated with reference to the adequacy of counsel's presen-

---

[5] Those convictions were for causing the untimely demise of a cow and selling it on the black market and for arguing with a "guard family" — evidently a type of "political" crime.

Given the questionable validity of the Cuban convictions, the prosecutor was ill-advised to offer the information to the judge, who was foreclosed from relying on the convictions. See *United States* v. *Tucker,* 404 U.S. 443, 449 (1972); *Commonwealth* v. *LeBlanc,* 370 Mass. 217, 221 (1976); *Commonwealth* v. *Settipane,* 5 Mass. App. Ct. 648, 653-654 (1977). Defense counsel should have objected to their introduction. See Smith, Criminal Practice and Procedure § 2005 (2d ed. 1983). Likewise, because there was no evidence that the defendant used illegal drugs, it was improper for the prosecutor to argue that the defendant lived "in the fast lane, alcohol, drugs rather than work for a living." Speaking for his client, defense counsel strenuously denied the allegations. However, because there is no proof that the judge did rely on the convictions, or the prosecutor's accusation of drug use, *Commonwealth* v. *Guerro,* 14 Mass. App. Ct. 743, 747 (1982), no prejudice has been shown.

tation at a sentencing hearing. Under Mass.R.Crim.P. 28(b), 378 Mass. 898 (1979), judges are only required to afford the defendant *or* his counsel an opportunity to speak. See *Commonwealth* v. *Jones,* 14 Mass. App. Ct. 991 (1982).

(e) Counsel's presentation at the sentencing hearing did not "[fall] measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. at 96. Contrary to the defendant's assertion that his lawyer argued that his client's story was difficult to believe, defense counsel in fact argued that, because the robbery evidence was thin, the defendant was entitled to a not guilty finding on that charge. In pursuing that argument, counsel suggested that, because his client had insisted "in the face of overwhelming evidence to the contrary" he had not stabbed the victim, the jury could have assumed that the defendant was also lying when he denied robbing the victim. As an argument pointing out the comparative weakness of the Commonwealth's robbery case, such remarks were permissible. Surely, too, in the face of three guilty verdicts, counsel's suggestion that the jury thought the defendant had lied was not unwarranted.[6]

The defendant's assertions that his lawyer called no witnesses at the hearing, did not mention the defendant's employment history or present a postconviction confinement report do not support an inference that counsel was ineffective. There is no showing that, if this additional material had been presented, the defendant would have been benefited thereby.[7] Compare *Osborne* v. *Commonwealth,* 378 Mass. 104, 113 (1979). Moreover, his lawyer did point to the defendant's advancement in this country, to the fact that he was gainfully employed, to his unusually good command of English,[8] and to the fact that he had finished high school. Counsel emphasized that the

---

[6] Compare *Osborne* v. *Commonwealth,* 378 Mass. 104, 113 (1979), which records the type of pejorative remarks that would justify reversal.

[7] Such evidence could have been presented in the context of a motion for a new trial on the ground of ineffective assistance of counsel.

[8] See section 2(c), *supra.*

Commonwealth *v*. Rosadilla-Gonzalez.

defendant had no criminal record in this country and felt remorse for the stabbing.

We have carefully reviewed the defendant's other arguments and conclude that all are without merit.

*Judgments affirmed.*