COMMONWEALTH *vs.* JERONE JONES.

No. 07-P-406.

Middlesex. February 11, 2008. - April 16, 2008.

Present: GELINAS, COWIN, & FECTEAU, JJ.

*Constitutional Law,* Public trial. *Practice, Criminal,* Public trial, Sequestration of witnesses, Sentence. *Firearms.*

At a hearing on a criminal defendant's pretrial motion to suppress evidence, the judge did not abuse her discretion in allowing the prosecutor's request to exclude the defendant's girlfriend from the court room, which remained otherwise open to the public, where the girlfriend was a potential witness in the case and also had been charged, in a separate proceeding, as an accessory to the defendant's crime. [570-572]

A criminal defendant failed to demonstrate that a trial court judge's remarks during the defendant's sentencing hearing indicated reliance on an improper element (i.e., lack of remorse as an aggravating factor) in rendering the sentence, where the judge's remarks, at most, indicated that the defendant's show of remorse, if believed, could have been a possible mitigating factor in sentencing. [572-577]

This court remanded a firearm offense for resentencing, where the original sentence imposed by the trial judge exceeded the maximum permitted by statute. [577]

INDICTMENTS found and returned in the Superior Court Department on March 9, 2004.

A pretrial motion to suppress evidence was heard by *Sandra L. Hamlin,* J., and the cases were tried before *Nancy Staffier-Holtz,* J.

*Ruth Greenberg* for the defendant.

*Fawn Balliro,* Assistant District Attorney, for the Commonwealth.

FECTEAU, J. The defendant appeals from jury convictions of involuntary manslaughter, found as a lesser included offense of the original charge of murder in the first degree, and of illegal possession of a firearm. He claims that the motion judge violated

his right to a public trial by excluding his girlfriend, Gwynne Doyle, from the hearing on his motion to suppress "all statements made by him to the police." The defendant also argues that he must be resentenced because the trial judge improperly commented at the sentencing hearing about the defendant's failure to show remorse for actions precipitating the victim's death. Finally, he claims that the sentence imposed on the firearm offense is illegal and must be vacated. We affirm as to the conviction and sentence for involuntary manslaughter, but remand for resentencing on the firearm offense.

On March 9, 2004, the defendant was indicted for the murder of Lynn Bader and for illegal possession of a firearm. On January 27, 2004, the defendant and Doyle were riding together in a Lincoln automobile on Route 93 southbound from New Hampshire to Boston, Doyle the driver and the defendant a front seat passenger. The defendant was carrying a handgun, as he claims was his practice when traveling to Boston, for personal protection due to his activities as a drug dealer and his fear that a former boyfriend of Doyle was stalking them. According to the evidence at trial, there had been some form of interaction or confrontation with another car driven by the victim during the trip. The defendant claimed that he became worried when the victim's car drove closely behind, and then alongside theirs, and that he had drawn his gun with his finger on the trigger.

At trial, the Commonwealth argued that the defendant deliberately reached across Doyle, with the gun in his hand, and intentionally fired a shot at the victim, fatally hitting her in the head. The defendant argued that the vehicles careened together at high speed, creating an impact that caused the gun accidentally to discharge, killing the victim. After the shot, both cars lost control and careened into the left guard rail. The defendant's car stopped first, and the victim's vehicle stopped about one-quarter mile down the road.

As the defendant stepped out of the passenger side door of the Lincoln, a passer-by who had stopped to assist heard the sound of an object hitting the ground. The passer-by looked and saw a gun. As the defendant picked it up, the passer-by walked away to call police and report the firearm. Upon police arrival, the defendant initially denied that he had a gun, but later suggested that

they look for it in the console of the Lincoln. The gun was later recovered from Doyle's waistband as she was being attended to by emergency medical technicians and prepared for the ambulance.

While seated in a cruiser, the defendant first said that the gun fired accidently upon loading and cocking it, adding that he was afraid that he had shot his girlfriend. Later, at the State police barracks, he was told that his girlfriend had not been hit, but that the driver of the other car had been killed. The defendant then said that, while it might be "a homicide," it was not "a murder." When asked what he did with the gun, he said he "probably" passed it to Doyle. Doyle was also criminally charged, both as an accessory after the fact of the victim's murder and for unlawfully carrying a firearm.

Both the defendant and Doyle moved to suppress certain of their statements. Although these motions were originally intended to be heard together on September 10, 2004, only the defendant's motion went forward to an evidentiary hearing. Doyle's motion was continued to a date in November, and postponed until January 3, 2005. Arguments were heard on the defendant's motion on this latter date; there was also an evidentiary hearing on Doyle's motion. Both were taken under advisement. The defendant's motion to suppress was denied on April 21, 2005. On September 12, 2005, the defendant's motion to join his case with Doyle's was denied. Following the defendant's convictions, he was sentenced to a term of imprisonment of from fifteen to eighteen years on the involuntary manslaughter offense and a concurrent term of from five years to five years and one day on the firearm offense.

1. *Sequestration of Doyle.* At the start of the hearing on the defendant's motion to suppress, the motion judge allowed the prosecutor's requested sequestration to exclude Doyle from the court room. The court room remained otherwise open to the public. The defendant contends that his right to a public trial as guaranteed by the Sixth Amendment to the United States Constitution was violated.[1] We disagree.

One purpose of a public trial is to allow a defendant the pres-

---

[1]We assume but do not decide whether the right to a public trial extends to pretrial proceedings such as suppression hearings. See *Commonwealth* v. *Hobbs*, 385 Mass. 863, 866 (1982). We recognize that this issue continues without a definitive answer.

ence of a friend "who might give him legitimate assistance or comfort without interfering" with the proceedings. *Commonwealth* v. *Marshall*, 356 Mass. 432, 434 (1969). "This right to a public trial is not, however, absolute and inflexible." *Commonwealth* v. *Stetson*, 384 Mass. 545, 550 (1981), quoting from *Commonwealth* v. *Bohmer*, 374 Mass. 368, 380 (1978). A trial judge may exclude spectators in certain situations in order to "ensure that the administration of the criminal law is fair and just." *Commonwealth* v. *Stetson, supra,* citing *Commonwealth* v. *Bohmer, supra* (judge may exclude spectators who intimidate witnesses or disrupt proceedings). In *Commonwealth* v. *Mc-Cann*, 22 Mass. App. Ct. 953, 954-955 (1986), for example, a judge permissibly excluded a discharged codefendant from the court room even after all evidence was taken in order to avoid the prospect of jury speculation. "Th[is] limited exclusion was within the trial judge's discretion to assure a fair trial, similar to that relating to the sequestration of witnesses." *Id.* at 955.

We do not view Doyle's exclusion as a closure of the court room, but rather as the proper exercise of a judge's discretion to order the sequestration of witnesses under Mass.R.Crim.P. 21, 378 Mass. 892 (1979). See *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 757 (1986) ("we see a distinction between the general public and witnesses when encouraging attendance throughout trials"). Doyle, whose own hearing and trial had yet to occur, continued to be a potential witness even though the parties "anticipated" that they were not likely to call her to testify and even though she possessed a privilege against testifying pursuant to the Fifth Amendment to the United States Constitution. At the time that the order was entered, neither side had made a commitment as to who might testify, nor had either side presented any evidence on the motion to suppress. Doyle still might have been called to testify because she was not only a percipient witness to the events giving rise to the charges, but also a witness to the defendant's physical condition during and following the events in question. "The process of sequestration consists merely in preventing one *prospective* witness from being taught by hearing another's testimony . . ." (emphasis supplied). *Commonwealth* v. *Bianco*, 388 Mass. 358, 369 (1983), quoting from Reporters' Notes to Mass.R.Crim.P. 21, Mass. Ann. Laws, Rules of Criminal Procedure, at 410 (1979).

Like the defendant in *Commonwealth* v. *McCann*, the defendant in this case does not contend that any person other than Doyle was excluded from the court room. The judge did not generally exclude all of the defendant's relatives and friends, but only the one individual who was charged as an accessory to his crime. See *Commonwealth* v. *McCann, supra* at 955, citing *Commonwealth* v. *Marshall*, 356 Mass. at 435. Sequestration orders rest in the sound discretion of the trial judge. *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 223 (1974). We cannot say that the judge abused her discretion in ordering this limited exclusion.

2. *The trial judge's remarks as to remorse at sentencing.* The defendant argues that the judge's remarks as to the defendant's expression of remorse at the sentencing hearing demonstrate her reliance on improper factors in rendering the sentence.[2] On the record before us, we disagree.

Provided that the decision is based on appropriate considerations, "[a] trial judge is permitted 'great latitude' in sentencing." *Commonwealth* v. *Derouin*, 31 Mass. App. Ct. 968, 970 (1992), quoting from *Commonwealth* v. *Celeste*, 358 Mass. 307, 310 (1970). In general, when imposing a sentence, the judge should consider "several goals: punishment, deterrence, protection of the public, and rehabilitation." *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993). She may also "consider a variety of factors . . . many of which are inadmissible at trial." *Commonwealth* v. *Derouin, supra*, quoting from *Commonwealth* v. *Coleman*, 390 Mass. 797, 805 (1984). These include the defendant's behavior, character, background, and, perhaps most important, "the nature of the offense and the circumstances surrounding the commission of the crime." *Commonwealth* v. *Derouin,*

---

[2]The judge's contested remarks concerning the defendant's offer of remorse were as follows:

"As far as the defendant's claim here today of remorse and also that represented by counsel and contained in the pre-sentence report, I had the opportunity of seeing the defendant on the stand as well as hearing all the evidence and the jury did and I don't know that [I] accept or credit the level of remorse that the defendant now presents or attempts to present to the Court. I certainly think that the defendant is obviously well within his rights to present what he did to the Court. He's obviously extremely fortunate to have had an attorney that did as superb a job as he did in this trial given the charge of first degree murder."

*supra*, quoting from *Commonwealth* v. *Coleman*, *supra*. A sentencing judge may not, however, enhance a defendant's punishment for exercising a constitutional right, such as pleading not guilty or refusing to confess. *Commonwealth* v. *Ravenell*, 415 Mass. 191, 193 (1993). *Commonwealth* v. *Mills*, 436 Mass. 387, 400 & n.9 (2002).

Multiple jurisdictions have acknowledged the fine line that exists between appropriately considering remorse and punishing a defendant for exercise of his Fifth Amendment rights against self-incrimination and to remain silent. See, e.g., *United States* v. *Richardson*, 582 F.2d 968, 969 (5th Cir. 1978); *United States* v. *Miller*, 589 F.2d 1117, 1138-1139 (1st Cir. 1978), cert. denied, 440 U.S. 958 (1979); *United States* v. *Bangert*, 645 F.2d 1297, 1308-1309 (8th Cir.), cert. denied, 454 U.S. 860 (1981); *United States* v. *Rosenberg*, 806 F.2d 1169, 1174-1175 (3d Cir. 1986), cert. denied, 481 U.S. 1070 (1987); *United States* v. *Johnson*, 903 F.2d 1084, 1090 (7th Cir. 1990); *State* v. *Barnes*, 33 Conn. App. 603, 610-611 (1994), aff'd, 232 Conn. 740 (1995); *People* v. *Albanese*, 102 Ill. 2d 54, 80-81, cert. denied, 469 U.S. 892 (1984). These jurisdictions recognize that remorse, or a lack thereof, may be an appropriate part of the court's inquiry into the defendant's character and amenability to rehabilitation. Cf. *Osborne* v. *Commonwealth*, 378 Mass. 104, 115 (1979), citing *Williams* v. *New York*, 337 U.S. 241, 245 (1949) (judge may consider factors pertinent to defendant's "conduct, and mental and moral propensities"); *Commonwealth* v. *Coleman*, *supra* (assessment of amenability to rehabilitation and character permits consideration of other crimes by defendant).

Other jurisdictions acknowledge the relevancy of remorse as a sentencing consideration, but articulate heightened concern that showing remorse requires an expression of guilt, and that true remorse amounts to an admission of guilt. See *Jackson* v. *State*, 643 A.2d 1360, 1379-1380 (Del.), cert. denied, 513 U.S. 1136 (1994); *State* v. *Shreves*, 313 Mont. 252, 259-261 (2002). Generally, constitutional concerns appear to increase as the sentencing judge criticizes the defendant for not expressing remorse, or otherwise considers the defendant's failure to do so as an aggravating factor. See *United States* v. *Bangert*, *supra*; *Jackson* v. *State*, *supra*.

We need not here determine whether (or in what circumstances) it is appropriate for a judge to consider a lack of remorse in rendering a harsher sentence.[3] In this case "[a]t most, the court's comments indicate that showing remorse could be a possible mitigating factor in sentencing." *United States* v. *Johnson, supra.* See *People* v. *Proctor*, 4 Cal. 4th 499, 545 (1992) (permitting consideration of remorse as mitigating factor).

As opposed to considering a lack of remorse as an aggravating factor, our precedent indicates that remorse, as it pertains to appropriate sentencing factors, may be considered in a grant of lenity. See *Commonwealth* v. *White*, 436 Mass. 340, 345 (2002) (remand for second resentencing judge to consider mitigating factors occurring after first sentencing, which included defendant's good conduct and remorse); *Commonwealth* v. *Rosadilla-Gonzalez,* 20 Mass. App. Ct. 407, 416-417 (1985) (counsel's performance at sentencing hearing not inadequate where he presented mitigating factors, which included defendant's remorse). Accord *United States* v. *Sato*, 814 F.2d 449, 452 (7th Cir.), cert. denied, 484 U.S. 928 (1987) ("there can be no doubt the sentencing judge may consider . . . whether the defendant is contrite"). Similarly, a defendant's admission of guilt "is a proper factor in more lenient sentencing," even if a failure to do so may not be considered as an aggravating factor. *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. 746, 751 (1989).

Here, the sentencing judge, when presented with the defendant's proffer of remorse, merely remarked that she was not sure if she accepted it. She was not bound to credit that expression of remorse at face value. Although a defendant may seek lenity in sentencing by way of mitigating factors, the judge must decide what weight to give to the proffered information. Thus, in *Commonwealth* v. *White, supra* at 345, this court instructed a Superior Court judge to use her discretion to assess whether the mitigating circum-

---

[3]Nor do we determine whether the Massachusetts Constitution imposes greater restrictions on considering remorse as an aggravating factor. To that end, we note that Federal cases discussing such consideration of remorse are based in part on the sentencing judge's ability to consider the defendant's veracity. See *United States* v. *Miller, supra* at 1138-1139, citing *United States* v. *Grayson*, 438 U.S. 41 (1978). The Supreme Judicial Court has held, however, that the defendant's veracity may not be considered by the judge at sentencing. *Commonwealth* v. *Coleman, supra* at 806.

stances offered by the defendant merited a lighter sentence. "It is, of course, up to the resentencing judge to decide what weight to give information concerning the defendant's conduct . . . , and we express no opinion as to whether the assessment of that information should result in a [different] sentence." *Ibid.* See *United States* v. *Perez,* 858 F.2d 1272, 1274, 1277-1278 (7th Cir. 1988) (permissible for judge to discredit remorse offered by defendant as possible mitigating factor).

It does not follow that a punishment is enhanced, or the defendant's exercise of a constitutional right is chilled, because a judge discredited a proffer of remorse. Instead, as occurred in this case, remorse was simply not considered a beneficial factor. *The judge's discretionary finding as to the proffered remorse* operated in the same manner as her decision that other mitigating factors, such as "jealousy, revenge, rage, [being] high on drugs," were also unavailable to weigh in the defendant's favor. Likewise, "[a] show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the [j]udge indulges a policy of penalizing those who elect to stand trial." *United States* v. *Thompson,* 476 F.2d 1196, 1201 (7th Cir.), cert. denied, 414 U.S. 918 (1973).

Accordingly, we reject the defendant's contention that it was ambiguous whether the judge improperly punished him for appearing unremorseful. We do not equate the judge's comments with those that indicated vindictiveness for failure to show remorse in *Commonwealth* v. *Mills,* 436 Mass. at 400-401. When the defendant (through counsel) explained that he refrained from expressing remorse based on Fifth Amendment concerns, the judge did not state that the defendant should have expressed remorse at an earlier time. Compare *United States* v. *Safirstein,* 827 F.2d 1380, 1388 (9th Cir. 1987) (judge criticized defendant for not showing remorse in response to defendant's assertion of Fifth Amendment rights at sentencing; sentence vacated). There is no indication that the judge in this case endorsed the prosecutor's sole remark related to remorse — that the defendant "had eighteen months to take responsibility for it [the crime] and chose not to until" he spoke at the hearing. Nor is this a case, as in *Commonwealth* v. *Henriquez,* 65 Mass. App. Ct. 912, 913-914 (2006), where the judge appeared to credit a defendant's remorse, but discounted it as against the harm done to the victim.

We similarly conclude that the judge's single reference to the defendant's demeanor at trial did not indicate that she improperly rendered a harsher sentence due to questions of veracity. See *Commonwealth* v. *Coleman*, 390 Mass. at 808; *Commonwealth* v. *Monzon*, 51 Mass. App. Ct. 245, 255-256 (2001). The judge's simultaneous reference to "all the evidence" at trial, along with her later comments, show that she was considering the defendant's amenability to rehabilitation in light of his brandishing a gun at the scene. In this context, the judge's remark did not go so far as to raise a suggestion of impropriety. See *Commonwealth* v. *Stuckich*, 450 Mass. 449, 462 (2008), citing *Commonwealth* v. *Banker*, 21 Mass. App. Ct. 976, 978 (1986).

We are satisfied that the defendant's sentence of from fifteen to eighteen years (which was less than that authorized by law and recommended by the prosecutor) was rooted in appropriate factors, the most prominent being the circumstances attending the crime's commission. The judge offered lengthy and repeated comments on the high degree of recklessness of the defendant's conduct:

> "[W]hat I keep coming back [to] is that [I must accept] the defendant's version of taking out a loaded weapon . . . I think that I need to because I think that the jury did . . . . Regardless of who started it or who escalated it, the fact is to take out a loaded weapon while barreling down Route 93 and either point it or intend to point it, whatever happened, it just represents to me just a total disregard for the safety of people around him including himself, his girlfriend, and ultimately the public including obviously [the victim]."

The judge summarized this sentiment at the end of her remarks, after citing the defendant's background and criminal record.[4] It

---

[4]The judge's particular remarks were as follows:

"I can only look at this case and when I look at this case and this killing again, I look at the defendant's background. I look at the circumstances, his criminal record. I look at the victim. I look at the impact. I look at the possibility of rehabilitation. I've looked at all of these factors and, you know, I don't see that this killing was a result of anything like a jealousy, revenge, rage, high on drugs, you know, mental

was on this consideration, not a failure to express remorse, that she based her decision.

3. *Sentence for illegal possession of a firearm.* The judge sentenced the defendant to five years to five years and a day at the Massachusetts Correctional Institution at Cedar Junction on the charge of illegal possession of a firearm. Pursuant to G. L. c. 269, § 10(*a*), however, the maximum sentence for this crime is five years. As conceded by the Commonwealth at oral argument, this sentence is unlawful. We therefore remand for resentencing on the firearm offense.

*So ordered.*

---

infirmity. This is a killing that occurred simply because [the defendant] was late and [the victim] was getting in his way and for that I see it as a very cold-blooded act even if it was just taking out a gun with the intent of brandishing it. It was extremely reckless and in light of all the circumstances I think that the Commonwealth's recommendation is high, but I don't think that it's outrageous and for that reason, considering all the factors, I'm going to impose a sentence on the involuntary manslaughter of fifteen to eighteen years and a five-year concurrent sentence on the gun charge."