After a probation violation hearing, a judge of the Juvenile Court found that the juvenile had violated the terms of his probation by committing two subsequent criminal offenses while on probation. As a result, she revoked his probation, entered a finding of delinquency, and ordered him committed to the Department of Youth Services (DYS) until his eighteenth birthday. The juvenile now appeals, arguing that the judge abused her discretion, punishing him for exercising his constitutional right not to admit to pending criminal charges. In his view, the judge impermissibly based the disposition on her personal feelings; improperly punished him for new offenses, rather than the offense for which he was placed on probation; and failed to consider properly the juvenile's rehabilitation. Given the judge's remarks at sentencing, we are constrained to vacate the order of commitment and remand the case for resentencing.[2]
Background. On June 26, 2015, the juvenile was arraigned in the Juvenile Court on charges of disorderly conduct and, being an arrestee, furnishing a false name to a police officer.[3] On August 6, 2015, the disorderly conduct charge was dismissed at the request of the Commonwealth and the juvenile admitted to sufficient facts on the false name charge. The case was continued without a finding of delinquency for one year and the juvenile was placed on probation in the interim.
On March 17, 2016, a violation of probation notice was filed with the court. A probation violation hearing was held on April 8, 2016; the judge found that the juvenile had violated the terms of his probation by committing an assault and battery and attempting to commit an unarmed robbery in Malden on March 13, 2016;[4] in addition, the judge found that he had committed an assault and battery on a police officer in Dedham on March 25, 2016.[5] At the juvenile's request, the disposition was continued to a later date.
On April 28, 2016, the judge held the disposition hearing. Both the probation officer and the juvenile's counsel made sentencing recommendations. Thereafter, the judge, over the next nine pages of trial transcript, berated the juvenile for failing to take responsibility for the subsequent offenses, and for showing no remorse for his actions. Specifically, in response to the juvenile's request that he be reprobated, the judge stated,
"despite the fact that he has no remorse for the facts that this Court found true at the violation of probation hearing, that he accepts no responsibility for those facts, that he accepts no responsibility for the arrest that occurred not a hundred yards away from this courthouse-... Because I know-I'm just saying this. I just scheduled the case for a trial before a jury.... And that's on the assault and battery on a police officer."
She continued,
"[t]he issues before me are the seriousness of the offenses for which [the juvenile]'s being violated, his likelihood of rehabilitation from a juvenile justice standpoint and considering this occurred, I've made a finding of it and there's no remorse for it, there's no acceptance of responsibility for it, which certainly affects, incredibly, my disposition today, rehabilitation.... I've just read about all the things he's done. But legally, he shows no remorse. Legally, he accepts no responsibility. Legally-and those are the things this Court looks at when we determine whether or not he's likely to be rehabilitated and successful on probation ... before committing a child, the likelihood of rehabilitation, there's two new offenses that have occurred and I'm not hearing anything about accepting responsibility, remorse, feeling sorrow-... for what's occurred."
The juvenile's counsel responded, "regarding not showing remorse, I don't respect-I don't represent [the juvenile] on that open charge out of Malden. I don't feel legally, ethically, I can permit him to make a statement, an admission on the record in a legal proceeding regarding an open case like that." With regard to the second charge of assault and battery of a police officer, counsel stated further that "we haven't concluded discovery in that case. I certainly can't speak allowing-." The judge interrupted, saying,
"No, that's-then that's up to you. That's the manner in which you're approaching the representation of your client, which I respect, and it's a certain approach, I certainly respect it. But you obviously know what he's doing here today. He's been found in violation for assaulting a police officer. After the Court heard what I've heard I don't know what more discovery someone needs but that's your approach and I respect that. And I'm being asked to sentence him on this offense for committing that violation that we all heard on April 8th, 2 days ago."
In explaining her sentence, the judge indicated that she must consider the safety of the citizens of the community who have been subjected to the juvenile's "ongoing criminality" and that in the "33 days [since the second offense was committed], [the juvenile] ha[s]n't been able to reflect on that and make a decision that [he's] sorry that [he] did it, that [he] accept responsibility as a 16-year old young man that this occurred." The judge then stated,
"it sounds to me that the argument [the juvenile is] making, is that you did it impulsively so you should be thoroughly excused for it and that you're not responsible. That's not appropriate and I don't think that's an appropriate way for you to look at things. Don't punish me, keep me on probation because I act impulsively. I don't feel bad about it later. I don't accept responsibility for it. And I'm not going to feel badly or express any remorse for the assault I committed on a police officer or my actions. I'll accept the attorney that represents me and the provision of an attorney. I'll accept the support from my clinicians, my custodian, DCF, and the support of [the Home for Little Wanderers], but I will not take any responsibility for it. And that, unfortunately, is a shame. And quite frankly, I don't understand it."[6]
The judge then told the juvenile that, if he admitted to committing the two crimes charged it "would be a significant advancement in [his] maturity."
After the judge revoked the juvenile's probation and vacated the continuance without a finding, adjudicating the juvenile delinquent, and committing him to DYS custody, defense counsel asked the judge to impose a suspended sentence. Denying the request, the judge responded that "[i]t might have been a better approach at the commencement of the case" to ask that any imposed sentence be suspended. The juvenile timely appealed the sentence.
Discussion. After determining that a probationer has violated the terms of his probation, the judge "can either revoke probation and sentence the defendant or, if appropriate, modify the terms of his probation." Commonwealth v. Durling, 407 Mass. 108, 111 (1990). In fashioning an appropriate disposition, the judge "may take into consideration, inter alia, a defendant's character, behavior, background, and amenability to rehabilitation. However, a judge's discretion is not unlimited. [She] may not punish a defendant for an untried criminal offense, [or] punish a defendant in order to send a personal philosophical message.... Furthermore, a judge may not punish a defendant for refusing to confess before sentencing." Commonwealth v. Mills, 436 Mass. 387, 399-400 (2002) (citations omitted). This is especially true in the case of a juvenile disposition, as juvenile proceedings are primarily rehabilitative in nature, not punitive. See Commonwealth v. Hanson H., 461 Mass. 459, 461 (2012). See also G. L. c. 119, §§ 53, 58.
"While 'a probationer need not be provided with the full panoply of constitutional protections applicable at a criminal trial,' he is entitled, at surrender hearings, to certain due process protections." Commonwealth v. Emmanuel E., 52 Mass. App. Ct. 451, 453 (2001), quoting from Commonwealth v. Durling, 407 Mass. at 112. Among the minimum requirements of due process is the right of the juvenile not to incriminate himself by admitting, through a show of remorse, to pending criminal charges. As this court said in Commonwealth v. Jones, 71 Mass. App. Ct. 568, 573 (2008), "[m]ultiple jurisdictions have acknowledged the fine line that exists between appropriately considering remorse and punishing a defendant for exercise of his Fifth Amendment [to the United States Constitution] rights against self-incrimination and to remain silent." While "remorse, or a lack thereof, may be an appropriate part of the court's inquiry into the [juvenile's] character and amenability to rehabilitation," we also acknowledged in Jones"concern that showing remorse requires an expression of guilt, and that true remorse amounts to an admission of guilt.... Generally, constitutional concerns appear to increase as the sentencing judge criticizes the defendant for not expressing remorse, or otherwise considers the defendant's failure to do so as an aggravating factor." Ibid.
Here, the judge made it clear that the juvenile's lack of remorse and failure to accept responsibility for the two crimes alleged "certainly affect [ed], incredibly, [her] disposition." In addition, her many reiterations that the juvenile had shown a lack of remorse and failed to shoulder accountability for his actions, and that he was taking advantage of his right to counsel, give the impression, at least, that improper factors controlled her thinking. In so doing, she lent credence to the juvenile's argument that his sentence was determined by such factors.[7]
At least on this record, we are persuaded that the juvenile has shown an abuse of discretion. See Commonwealth v. Marcus M., 92 Mass. App. Ct. 1, 3 (2017). We therefore conclude that the order revoking the juvenile's probation and committing him to the custody of DYS must be vacated.[8] See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).
Order revoking probation vacated.

In light of views expressed during the proceedings, we think that a fresh look is appropriate, and, accordingly, direct that the matter be considered by a different judge on remand.

It appears from the record that, at the time of the underlying offense, the juvenile was fifteen years old and in the custody of the Department of Children and Families (DCF); he had been placed at the Home for Little Wanderers in Walpole. On June 26, 2015, the facility reported "a missing child" to the local police. "After several minutes of searching," an officer found the juvenile on "one of the busiest streets in Walpole." The juvenile was uncooperative with the police officers and told them, among other things, that his name was "Jamal Brown," which was not his name. He was told repeatedly that he was not under arrest, but being detained in response to the "missing juvenile" report until he could be identified. The juvenile then attempted to flee and to push past the officers; he was "controlled and handcuffed." The encounter drew attention from people in local businesses, and, as a result, the juvenile was charged with disorderly conduct. Once his clinician and counselor identified him, he "was charged with giving a false name to a police officer."

At the probation violation hearing, there was evidence that the juvenile approached a young man who was "hanging out with his friends" and said, "Rip your shit, boy." The young man, who was the victim in the attempted robbery, said, "What do you mean?" The juvenile responded, "Give me your stuff." The victim thought it was a joke because his "friends were friends with [the juvenile]" and he said, "why." "He goes, 'cause I want it, my friend has a gun and he'll come and shoot you. [The victim, still thinking it was a joke] was like, okay." "But then when [the juvenile] grabbed me and, like, tugged me, I was like, okay, I'm calling the police and then [the juvenile] ran with his friend." The victim testified that he was afraid, but not hurt. The juvenile was later arrested without incident at his mother's home after a showup identification.

At the probation violation hearing, there was evidence that, when the juvenile learned that his probation officer intended to ask that he be detained at the first violation hearing, he ran away. Police soon found him in the parking lot of a local train station; when the officer grabbed him, he pulled away. "And then he broke free with his right arm. And [the officer] noticed down to the side he had a clenched fist." Another officer approached and they placed him on the ground. The juvenile struggled as the officers put him in a police cruiser, kicking at the officer who had approached him initially. The officer, in response to the question, "Did any of his kicks land on you?" answered, "Not really. I mean, they were on my hands so." He testified that he was not injured.

The judge went on to say that what she was hearing from the juvenile "is I really didn't violate my probation. We have a hearing, you've determined and you heard all the evidence I've heard, you looked and sized up the witnesses as I did. You know exactly what the case is, as I did, beginning of the month. And yet you say, I'll take my jury trial on May, June, which is good, great. But I'm on probation and I committed those acts. The Court heard those acts. The Court made a legal decision. But place me back on probation. I don't accept responsibility for things I do. I don't express remorse for when I do things wrong and the Court finds against me. I don't express those things. I'm just-I'm just on probation and I want to get back to Taco Bell. That's what I'm hearing. It's not impressive. Keep you on probation for two separate criminal offenses. It's not impressive."

The Commonwealth conceded at oral argument that the repetitive comments made during disposition by the judge were neither ideal nor defensible.

Based on this conclusion, we need not address the juvenile's remaining arguments.