COMMONWEALTH *vs.* GARY J. NICHOLSON.

No. 01-P-897.

Norfolk. March 11, 2003. - July 18, 2003.

Present: PORADA, KAPLAN, & CYPHER, JJ.

*Breaking and Entering. Receiving Stolen Goods. Larceny. Search and Seizure,*
Motor vehicle, Automobile, Impoundment of vehicle, Inventory. *Practice,*
*Criminal,* Argument by prosecutor, Disclosure of evidence, Exhibits,
Instructions to jury. *Evidence,* Videotape.

At the trial of complaints alleging operating under the influence, malicious
destruction of property, breaking and entering in the nighttime with intent
to commit a felony, receiving stolen property, larceny over $250, and
larceny under $250, the admission in evidence of four liquor bottles, a
video recorder, a bag full of cigarettes, and a bag full of rolled coins,
which the police had removed from the defendant's automobile without a
warrant, did not violate the defendant's rights under the Fourth Amend-
ment to the United States Constitution and art. 14 of the Massachusetts
Declaration of Rights, where the police properly preserved the liquor
bottles as evidence connected to the operating under the influence charge,
and where it was lawful to allow the victim of the break-in to view the
several items and confirm that they were his property. [605-607]

At a criminal trial, the judge properly denied the defendant's motion for a
mistrial after the prosecutor erroneously refuted a witness's testimony from
the prosecutor's own claimed knowledge, where the judge intervened and
instructed the jury at the time of the remark, as well as in final instruc-
tions, and where the jury's verdict acquitting the defendant of certain of
the charges demonstrated that the jury were scrupulous. [607-608]

At a criminal trial, even assuming that error arose from the fact that a video
recorder that was the subject of a pretrial request for disclosure had a
videotape left inside it, the defendant was not harmed, where defense
counsel elicited on cross-examination of a police witness that he had not
viewed the videotape, and where, on cross-examination of another witness,
defense counsel elicited the fact that the tape showed no picture of the
defendant. [608]

A criminal defendant could not complain on appeal about references in the
prosecutor's closing remarks to testimony received about items that were
merely marked for identification, where the defendant did not move at trial
to have the testimony stricken from the record. [608-609]

At a criminal trial, the judge's use, during final instructions to the jury, of the
term "when" did not inform the jury that the judge thought the defendant
was guilty and that they should also, where the term was preceded, fol-

lowed, and supported in meaning by veritable and commanding use of the term "if," so that a hearer would recognize the use of the term "when" as a momentary stumble of speech. [609]

COMPLAINTS received and sworn to in the Wrentham Division of the District Court Department on September 8, 1999.

The cases were tried before *Daniel B. Winslow*, J.

*Barry F. Collins, Jr.*, for the defendant.

*Michael Ksiazek & Adam Stewart* (*Ellen McCusker Devlin*, Assistant District Attorney, with them) for the Commonwealth.

KAPLAN, J. A break-in at a restaurant in the town of Franklin led to charges in many counts against the defendant. He was found guilty in District Court of most, and he appeals. The major convictions are plainly free of error. As to the relatively minor convictions, the defendant seems to complain about the warrantless retrieval of physical items offered in evidence at trial, and he has further complaints about the conduct of the trial. We shall affirm.

On September 8, 1999, about 1:30 A.M., Officer Thomas Lynch of the Franklin police, in his cruiser at a parking lot, 380 King Street, Franklin, was operating "stationary radar" focused on King Street. He noticed a blue car traveling at the excessive illegal speed of fifty-seven miles per hour and weaving in and out of the marked lane. Putting on his lights, Lynch drove behind the car and followed it to a stop at a red light at the junction of King and Union Streets. As the signal changed, the car sped forward. Lynch sounded his siren. The car continued a distance of perhaps 200 yards before it responded to the siren by pulling over.

Officer Lynch from his now stopped cruiser approached the driver (the defendant) alone in the car. Upon request the defendant produced license and registration. He appeared to Lynch to be glassy-eyed, drooling somewhat from the mouth. Looking into the car, Lynch saw on the front passenger floor four liquor bottles, two with spouts (pourers) from their tops. At Lynch's direction the defendant left the car and walked (rather unsteadily, Lynch thought) to its rear. About this time, Officer Eric Cusson, also of the Franklin police, alerted by radio call,

drove up. He witnessed Lynch applying some sobriety tests to the defendant, and the defendant complaining of a bad back. Both officers thought the defendant's responses indicated unfitness to drive. Lynch arrested the defendant about 1:41 A.M. for operating under the influence of alcohol (OUI) and placed him handcuffed in the back of the cruiser.

Lynch and Cusson noted in the car two bags and a video recorder besides the four bottles. Ready to depart for the police station, Lynch asked Cusson to do the complete inventory, to wait on the spot until the tow truck appeared, and then to bring the bottles to the station. Cusson did as told. The video recorder was a Samsung brand, one bag contained a number of packs (perhaps over forty) of cigarettes with some loose cigarettes, and the other bag a few stacks of rolled coins; also on board were a pair of work gloves and a pair of shoes. Upon the arrival of the tow truck, Cusson picked up the bottles (as evidence of crime) and the recorder (for safekeeping because of its value), and drove to the police station. The other articles he left in the car, which was towed to the Denny's Motors parking lot. Officer Lynch, present at the police station, had acted as booking officer for the defendant, and now placed the bottles in the station's "evidence locker."

Officers Lynch and Cusson, joined by Officer Lee Drake, had a conversation at the station evidently touching on recent break-ins at a local bar. Cusson and Drake proceeded to the "Dugout" bar and restaurant at Wachusetts and Cottage Streets, Franklin, with Lynch following there around 2:30 A.M. The officers, in company with an Officer Strange, found immediate evidence of a break-in. A window at ground level to the side of the restaurant building had been smashed through from the outside, and a nearby door was open, breached from the inside.

The police telephoned Mark Ballarino, manager of the restaurant, at 2:45 or 3:00 A.M, and told him the place had been robbed and they had "the person." Ballarino, appearing promptly at the restaurant, confirmed that four or five liquor bottles — which he was able to name: Kahlua, Butternips, Disorino, Bailey's Irish Cream, and perhaps Absolut — were missing, as well as a bag of cigarettes (mostly Marlboros) and a Samsung recorder. (Ballarino had set the recorder near a kitchen

window to record, by automatic exposures at short intervals, any activities in the adjacent parking space; the restaurant had been robbed twice before, and there was a chance of getting a picture of the thief if he should lurk again about the building.) At request, Ballarino went to the police station, reaching there a half hour after he had reported to the restaurant. Meanwhile, the two bags with contents had been taken from the car now standing impounded at Denny's Motors (taken "before the tow truck driver had left for the night") and brought to the station. Ballarino identified all the articles as belonging to the restaurant — four bottles, recorder, two bags with contents. Ballarino recognized the defendant in custody to be a man who had recently frequented the bar and talked of sports and played Keno. The defendant was charged with additional crimes besides OUI.

At the trial of the action the foregoing narrative was testified to for the Commonwealth by the witnesses Lynch, Cusson, Drake, and Ballarino.

For the defense, a neurosurgeon, Dr. James P. Wepsic, testified to the defendant's leg condition which affected the movement of his back. (Lynch had been taxed during cross-examination for having the defendant perform too few of the standard sobriety test maneuvers, thus weakening Lynch's inference that the defendant was under the influence.) There was also testimony by the defendant's girlfriend, Cheryl Goldsmith, suggesting alibi.

The jury brought in verdicts as follows: Not guilty: operating under the influence, malicious destruction of property (door), same (window). Guilty: breaking and entering in the nighttime with intent to commit a felony, receiving stolen property over $250, larceny over $250 (recorder), larceny $250 or less (bottles), same (bag of coins), same (bag with cigarettes[1]).[2]

1. *Convictions plainly correct.* With the exception of "Other

---

[1]This was charged as over $250, but the jury acted on the included lesser offense.

[2]The sentences: Two and one-half years in a house of correction for breaking and entering with intent; same sentence, concurrent, for receiving stolen goods; for larceny of the recorder, two years in a house of correction, concurrent with the breaking and entering sentence, suspended for four years with

matters" to be discussed *infra*, the defendant does not suggest any basis for attack on the convictions of breaking and entering, of receiving stolen property, or of larceny $250 or less (bottles).

2. *Warrantless handling of physical items.*[3] Objecting to the introduction of the items involved, the defendant was presumably invoking the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, but nowhere did he make clear his precise grievance. We may assume he thought a warrant should have been obtained somewhere along the line.[4]

The liquor bottles, being visibly connected as elements of proof of the OUI charge (not to speak of the charges later added), were properly taken up and preserved by the police as evidence. The inventory "search" and impoundment were lawful, also without a warrant, according to precedent starting with *South Dakota* v. *Opperman*, 428 U.S. 364 (1976).[5]

It was in order for the police to ask Ballarino to attend at the police station and confront the suspect and furnish any information he might have about the man. Compare *Commonwealth* v. *Walker*, 421 Mass. 90, 95 (1995); *Commonwealth* v. *Coy*, 10 Mass. App. Ct. 367, 371 (1980); *Commonwealth* v. *Drane*, 47 Mass. App. Ct. 913 (1999). So also, on a like basis it was lawful and convenient to have Ballarino view the several items (including two borrowed from the impounded car for the purpose of inspection) and confirm that they were property of the Dugout and matched what he had told the police at the site and again at the station. Indeed this process of eyeball identification was largely superfluous, conducted out of abundance of

probationary conditions; for each of the three other larcenies (bottles and two bags), four years probation concurrent with the recorder probation.

[3]The defense did not move pretrial to suppress the physical items, nor did either side move for voir dire in the course of trial. Rather, the defense objected as the prosecution offered the items in evidence — not a procedure one would recommend.

[4]The trial judge evidently thought little of the defendant's objection and dismissed it by reference to the "inevitable discovery" exception to the exclusionary rule. See *Commonwealth* v. *O'Connor*, 406 Mass. 112, 116-117 (1989). We return to this point at note 6, *infra*.

[5]The record leaves it unclear whether the inventory procedure was in writing, see *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988), but no point is made of this on appeal.

caution, for the correspondence of Ballarino's statements at the site and station with the inventory list and descriptions would satisfy the same purpose. There is nothing in the picture that calls for a "search" and thus for a search warrant. Compare Justice Powell's remarks in the *Opperman* case, 428 U.S. at 376-384 (Powell, J., concurring), justifying the warrantless car inventory exception because it does not involve a "search" or a need for magistrate's evaluation of factual contentions.

Alternatively, we may recast or reinterpret the situation with attention to the consent of the presumptive owner of these items. As impoundment ended, it would be open to the police to return the property to Ballarino for the owner, and Ballarino's willingness to surrender them to the police for use as evidence of the robbery may be taken for granted.[6]

Another analysis: One preferring heavy artillery can wheel up the "automobile exception" to the exclusionary rule. Counting on Ballarino's statements and other factors, the police surely had probable cause to believe the bags were evidence of crime. As the items lay in an inherently mobile, although temporarily stationary motor vehicle, the police were entitled to seize them without warrant, the automobile exception supplying the substitute for a finding of actual "exigency." The present case is indeed easier for the exception than such a case as *United States* v. *Gastiaburo*, 16 F.3d 582, 584-587 (4th Cir.), cert. denied, 513 U.S. 829 (1994). There the car carrying illicit drugs had been properly impounded. The police received a reliable tip that a firearm was lodged in a hidden compartment of the car. The police went in and searched the car and found the object. The United States Court of Appeals for the Fourth Circuit upheld the warrantless procedure. To the same effect (automobiles provisionally immobilized may be searched without warrant if probable cause exists to believe vehicle contains contraband), see *United States* v. *Spires*, 3 F.3d 1234, 1237 (9th Cir. 1993); *United States* v. *Matthews*, 32 F.3d 294, 295, 298-299 (7th Cir. 1994); *State* v. *Pederson-Maxwell*, 619 N.W. 2d 777, 779, 780-782 (Minn. App. 2000). Statements by the United States Court of Appeals for the First Circuit in *United States* v.

---

[6]The judge's reference to "inevitable discovery" may be justified on this consent basis.

*McCoy*, 977 F.2d 706, 710 (1st Cir. 1992),[7] are broad enough, and more, to cover such situations. There is no Massachusetts decision directly in point, but the cases of *Commonwealth* v. *Motta*, 424 Mass. 117, 122 (1997) (echoing *Pennsylvania* v. *Labron*, 518 U.S. 938, 940 [1996]), and *Commonwealth* v. *Agosto*, 428 Mass. 31, 33-35 (1998), seem favorably inclined. There is a possibly negative implication in *Commonwealth* v. *Alvarado*, 420 Mass. 542, 552, 554-555 (1995), suggesting the immobilizing of the vehicle may exclude the automobile exception, but the case was decided on failure of a showing of probable cause.

3. *Other matters.* a. The defense took considerable pains to reconstruct parts of the record, see Mass.R.A.P. 8(c), as amended, 378 Mass. 933 (1979), but the closing speeches seem to have been left untranscribed because of poor audibility. Nevertheless it is possible, from the judge's instructions and his statement at the hearing on a motion to stay sentence, to make out the substance of the prosecutor's remarks here in question.

The alibi witness said she and the defendant had supper together on the night of September 7 and viewed the movie "Last of the Mohicans," estimating that it ran for such and such a time. In her closing speech the prosecutor said the period, according to her personal experience, was thus and so, a shorter period (allowing the defendant more time to get putatively from the defendant's place to the scene of the break-in). It was certainly wrong, as the Commonwealth concedes, for the prosecutor to refute a witness's testimony from her own claimed knowledge. The judge intervened and instructed the jury with

[7]"Under the 'automobile exception,' the only essential predicate for a valid warrantless search of a motor vehicle by law enforcement officers is 'probable cause to believe that the [vehicle] contains contraband or other evidence of criminal activity.' *United States* v. *Panitz*, 907 F.2d 1267, 1271 (1st Cir. 1990). See *Carroll* v. *United States*, 267 U.S. 132, 153-56 . . . (1925). 'The inherent mobility of motor vehicles, *California* v. *Carney*, 471 U.S. 386, 390 . . . (1985), and the reduced expectation of privacy associated with them, *id.* at 391, . . . justify application of the vehicular exception "[e]ven in cases where an automobile [is] not immediately mobile." ' *Panitz*, 907 F.2d at 1271. We have held that probable cause alone justifies a warrantless search of a motor vehicle seized without a warrant while parked in a public place, 'whether or not exigent circumstances prevailed at either the time of the seizure or the time of the search. Moreover, the search, so long as reasonable in scope, need not be conducted contemporaneously with the seizure . . . .' *Id.* at 1272 (citing cases)." *United States* v. *McCoy*, 977 F.2d 706, 710 (1st Cir. 1992).

force about how to handle this impropriety; spoke to the point with like force in the final instructions; and plainly, judging from his remarks to counsel, considered carefully whether his instructions to the jury could be fully curative. The evidence of the defendant's guilt was exceptionally strong and the jury in acquitting him of certain of the charges proved themselves discriminating and scrupulous. On the whole case we hold there was no error in the denial of the defendant's motion for a mistrial.

b. Responding to a request pretrial by the defense for disclosure of any videotapes with pictures of the defendant, the prosecution answered that it had none such. The defense also moved for access to view the evidence, which was allowed, but we are not told what, if anything, the defense in fact inspected.

The defendant says he was surprised to learn at trial there was a videotape left in the Samsung recorder. But on cross-examination of Officer Cusson, defense counsel asked whether the witness had viewed this tape; answer, no. During cross-examination of Ballarino, counsel elicited that the witness was aided in his identification of the recorder as being his own by the fact that it contained the videotape; that he had viewed it; and that it showed only the parking lot, no picture of the defendant.

Even assuming the defense was somehow deprived of pretrial information about the videotape contained in the recorder, it is hard to see how it suffered thereby.

c. The judge was cautious in requiring the prosecution to show in some detail that the items offered in evidence as exhibits were with sufficient probability the very items lifted from the Dugout. Perhaps overcautiously, he excluded as an exhibit the bag with cigarettes (while admitting the bag with rolled coins because it had the distinctive letter "W" affixed as a reminder to the staff to attend to the contents on Wednesdays). The judge told the jury to disregard items merely marked for identification, but he let stand the testimony that may have been received about it. An argument could be made that if the item did not qualify as an exhibit, the related testimony also should exit from consideration. The defense did not so move and can-

not now complain of any reference to the testimony in the prosecutor's closing argument.

d. Here is a passage from the judge's final instruction, with "when" emphasized:

> "If you determine that the Commonwealth has proved beyond a reasonable doubt that the defendant is guilty of larceny . . . if you find the defendant guilty of larceny, just as the, *when* you find the defendant guilty, if you find the defendant guilty of malicious destruction of property, if you find the defendant guilty of any of those counts, malicious destruction of property or larceny of property, there'll be a separate checklist, value more than $250 or less than $250, and you just check off which value you find has been proven by proof beyond a reasonable doubt."

The defense argues that "when" informs the jury the judge thinks the defendant guilty, with an implication so should and will the jury. "When" is not uncommonly used in ordinary speech with the sense of "if," and here it is preceded, followed, and supported in meaning by veritable and commanding "ifs." A hearer would accept the equation of "when" with "if" or recognize a momentary stumble of speech. The defense did not react at the time and could hardly have been harmed.

*Judgments affirmed.*