NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-201

COMMONWEALTH

vs.

NIGEL VAUGHN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Nigel Vaughn, appeals from an order of a Superior Court judge denying his motion for resentencing based on ineffective assistance of counsel at sentencing. We discern no substantial risk of a miscarriage of justice in light of the strong sentencing arguments counsel made and the inapplicability of the psychiatric and medical records submitted to the motion judge to the concerns that motivated the trial judge's sentence. Further concluding that the sentencing judge properly treated the defendant's 2004 firearms conviction at sentencing, we affirm the denial of the motion for resentencing.

1. Background. On April 12, 2005, the defendant, who was a regular at Larry's Sports Bar in Fall River, was in and out of the bar all day. That evening, Helena Judge and her boyfriend, Anthony Austin, drove to the bar to pick up the Helena's

brother, Shane Judge.  Upon arriving, Helena looked for Shane.[1]
When she could not find him, she called him to see where he was.
While they waited for Shane to arrive, Austin ordered a drink
from the bar and Helena waited to play a game of pool.

Once he had his drink, Austin found a seat to watch a
basketball game.  When he sat down, a white hooded sweatshirt,
which did not belong to him, fell to the ground.  At that
moment, the defendant, whom Helena knew only by a nickname,
approached Austin and Helena and "started talking trash about
the sweater."  Helena grabbed the sweatshirt from the floor,
handed it to the defendant, and told the defendant it was an
accident.  The defendant muttered "[s]omething about people
being disrespectful" as he left the bar.

Approximately fifteen minutes later, Shane arrived at the
bar and ordered a drink.  A few minutes later, the defendant
rushed back into the bar, this time accompanied by three other
men.  The defendant confronted Helena and Shane and asked
Helena, "Did you call somebody on me?"  Before Helena could
respond, Shane started speaking.  One of the defendant's friends
punched Shane in the face and a fight erupted between the two
groups.

---

[1] Because the Judges "share a last name, we refer to them by
their first names."  Commonwealth v. Oliver, 102 Mass. App. Ct.
609, 610 n.2 (2023), quoting Commonwealth v. Sanders, 101 Mass.
App. Ct. 503, 504 n.3 (2022).

2

When Austin saw the commotion, he approached the defendant and punched him. The defendant pulled out a gun, aimed it at Austin, and started shooting. A bullet struck Austin's left hand. A second bullet struck Austin in the back and exited through his stomach. Next, the defendant aimed his gun at Helena and fired. A bullet entered through Helena's chin before traveling through her throat and lung and eventually lodging itself in her back. Another bullet struck Shane in the back.

In response to the shootings, patrons ran out of the bar and, in doing so, pushed Austin outside. The defendant hopped into his car and attempted to run Austin over as he drove away. By the time police arrived, the defendant had already fled the scene. He was later identified by the victims.

Austin sustained a hernia and a broken hand. Helena sustained a "U"-shaped scar from where the bullet entered her throat and another scar from a tube that went through her throat while she was hospitalized to drain the wound. Helena also developed a cyst from the bullet that entered her lung.

2. _Procedural history_. We focus on the events surrounding the defendant's sentencing hearing. The defendant was indicted for four counts of armed assault with the intent to murder, G. L. c. 265, § 18 (b); four counts of mayhem, G. L. c. 265, § 14; one count of unlawfully carrying a firearm, G. L. c. 269, § 10 (a); and one count of unlawfully possessing ammunition,

3

G. L. c. 269, § 10 (h).  Prior to trial, the judge dismissed one count of armed assault with intent to murder and one count of mayhem.  At trial, the judge allowed the defendant's motion for a required finding of not guilty on the charge of unlawfully carrying a firearm in light of the absence of evidence of the requisite barrel length.  The jury returned guilty verdicts on the remaining charges.  After the verdicts issued, the Commonwealth moved for immediate sentencing.  Defense counsel, however, requested a continuance on the basis that "[the defendant] has family members that don't live in the area, that couldn't be here for the trial, that would want to write letters for him."  The judge allowed defense counsel's request for a continuance.

At the sentencing hearing, the Commonwealth recommended that, for the three counts of armed assault with the intent to murder, the defendant be sentenced for ten to twelve years in prison on each count, to be served consecutively.  For the three counts of mayhem, the Commonwealth recommended the same sentence, to be served concurrently with the sentences for armed assault.  For the unlawful possession of ammunition, the Commonwealth recommended that the conviction be placed on file.

Defense counsel recommended a prison sentence of six to nine years.  In making his recommendation, defense counsel argued that the defendant was "a young man who ha[d] gone

4

through a lot of struggles . . . . His house burned down. At age six his family was displaced. Between the ages of six and ten, they moved from place to place without any sort of significant stability." Defense counsel stated that the defendant was "left without a lot of significant role models in his life" and that he had never served a "significant period of time" of incarceration. Defense counsel provided the judge with letters of support from the defendant's family and friends, which described the defendant "as a caring person and someone who is capable of rehabilitation." At the conclusion of his argument, defense counsel reiterated that consecutive sentences were not appropriate.

In sentencing the defendant, the trial judge explained that "[o]f greatest concern in assessing the danger that [the defendant] continues to pose to society is the fact that he refuses to stay away from guns." She stated that in 2004 "the defendant received committed time after being convicted of a firearms offense . . . . [He] then was arraigned on March 11, 2005 in Brockton District Court on charges of unlicensed carrying of a firearm and unlawful possession of a firearm." The judge further stated that the defendant nonetheless committed the crimes at Larry's Sports Bar one month later.

Ultimately, the judge concluded that "a lengthy period of time in state prison [was] necessary to protect the public and

5

for [the defendant] to appreciate the gravity of his actions." The judge sentenced the defendant to consecutive terms of nine to ten years in prison for each of the first two armed assault convictions. The judge imposed ten years of probation on the remaining armed assault conviction. For the remaining convictions, the judge imposed concurrent prison sentences.

The defendant appealed from his convictions, raising no issues concerning sentencing or the effectiveness of counsel. In November 2010, a panel of this court affirmed. Commonwealth v. Vaughn, 78 Mass. App. Ct. 1106, rev. denied, 458 Mass. 1111 (2010). In January 2011, the defendant filed a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). In April 2012, after an evidentiary hearing, the trial judge denied the defendant's motion for a new trial, which raised, inter alia, an issue concerning the effectiveness of trial counsel but not raising any issues concerning sentencing. Later that same month, the defendant filed a notice of appeal. In May 2014, a panel of this court affirmed the denial of the defendant's motion for a new trial. Commonwealth v. Vaughn, 85 Mass. App. Ct. 1118 (2014).

In October 2021, the defendant filed a second motion for a new trial. The defendant's second motion for a new trial, unlike his first motion for a new trial, was based on ineffective assistance of counsel at the sentencing hearing.

6

In support of his second motion for a new trial, the defendant provided psychiatric and medical records which recounted the defendant's homelessness and problems with impulse control as a child.  To supplement the records, the defendant submitted an expert report which recounted the significant abuse that he suffered as a child, though much of the report was based on the defendant's uncorroborated reporting.[2]  In addition, the defendant presented his own affidavit, an affidavit from trial counsel, and an affidavit from appellate counsel.  In a margin endorsement the motion judge denied the defendant's motion "for all the reasons stated in the Commonwealth's opposition."  This appeal followed.

3.  Ineffective assistance of counsel at sentencing.  When a defendant appeals from the denial of a motion for a new trial, we review "only to determine whether there has been a significant error of law or other abuse of discretion."  Commonwealth v. Sylvain, 473 Mass. 832, 835 (2016), quoting Commonwealth v. Lavrinenko, 473 Mass. 42, 47 (2015).  "Where a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that (1) the 'behavior of

---

[2] Similarly uncorroborated was the defendant's report of the facts relating to the index crimes.  For example, the expert report relates that "[the defendant] apologized to the woman with whom he had been in conflict, and he bought her a 'triple shot' as a peace offering," but this version of events is inconsistent with the trial testimony.

7

counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer' and (2) such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Tavares, 491 Mass. 362, 365 (2023), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "When making a claim of ineffective assistance of counsel at sentencing, the defendant has the burden of showing 'that he would have received a lighter sentence had his counsel conducted himself any differently at sentencing.'" Commonwealth v. Gilbert, 94 Mass. App. Ct. 168, 175 (2018), quoting Commonwealth v. Fanelli, 412 Mass. 497, 503 (1992).

If a defendant raises new claims in his motion for a new trial that could have been raised on direct appeal or in a prior motion for a new trial, those claims are waived. See Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001); Rodwell v. Commonwealth, 432 Mass. 1016, 1018 (2000) ("If a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is waived"). Nonetheless, we review waived claims for "a substantial risk of a miscarriage of justice." Commonwealth v. Randolph, 438 Mass. 290, 296 (2002).

Here, we discern no substantial risk of a miscarriage of justice. The defendant has not demonstrated that trial

8

counsel's failure to investigate and present the defendant's psychiatric and medical records at the sentencing hearing fell measurably below conduct that might be expected from an ordinary fallible lawyer. See Gilbert, 94 Mass. App. Ct. at 176 (no ineffective assistance of counsel where "defense counsel offered a lengthy, detailed sentencing argument"). Trial counsel attested that he "did not conduct a thorough investigation" into the defendant's psychiatric and medical records, nor did he request those records. Nonetheless, at the sentencing hearing trial counsel related to the sentencing judge the struggles that the defendant faced as a child. He recounted that when the defendant was six years old "[h]is house burned down" and "his family was displaced." Trial counsel argued that this instability "left [the defendant] without a lot of significant role models in his life." See Commonwealth v. Mamay, 407 Mass. 412, 425 (1990) (no ineffective assistance of counsel where "the judge was exposed to a number of potential mitigating factors"). In addition, trial counsel stated that the defendant had not served any significant time and offered letters of support from the defendant's friends and family, which highlighted the defendant's capacity for rehabilitation. Cf. Osborne v. Commonwealth, 378 Mass. 104, 113 (1979) ("[counsel] did not mention the possibility of rehabilitation"). Finally, trial

counsel "request[ed] that the judge impose concurrent sentences."  Commonwealth v. Caputo, 439 Mass. 153, 170 (2003).

Moreover, the defendant has not shown that use of his psychiatric and medical records would have resulted in a lesser sentence.  See Fanelli, 412 Mass. at 503 ("the defendant cannot show that he would have received a lighter sentence had his counsel conducted himself any differently at sentencing").  The crime here was particularly violent, senseless, and cruel, involving an unprovoked shooting over a misplaced sweatshirt that only by chance was not a triple homicide.  The sentencing judge's primary concern was not the source of the defendant's criminality but his dangerousness and resistance to deterrence. The psychiatric and medical records detailing the defendant's "explosive violent behavior at school," participation in gang violence, and "problems with impulse control, frustration tolerance, judgment, and emotional regulation" threatened to underscore the judge's concerns.  The defendant's uncorroborated descriptions of abuse suffered as a child -- even if the sentencing judge credited them -- had little tendency to address the judge's concerns.  For these reasons, "a more extensive recitation of the defendant's situation was not likely to 'affect the sentences imposed.'"  Caputo, 439 Mass.at 169, quoting Commonwealth v. Lykus, 406 Mass. 135, 146 (1989).  See Gilbert, 94 Mass. App. Ct. at 177 (there was "some risk in

10

counsel's tactic of exposing the horrors of the defendant's childhood . . . . [i]n light of the horrific nature of the crimes").  Accordingly, we discern no substantial risk of a miscarriage of justice arising from trial counsel's performance at sentencing.

4.  Treatment of the 2004 conviction.  "A sentencing judge has great discretion within the statutorily prescribed range 'to fashion an appropriate[,] individualized sentence.'" Commonwealth v. Cole, 468 Mass. 294, 302 (2014), quoting Commonwealth v. Mills, 436 Mass. 387, 399 (2002).  "In fashioning an appropriate and individualized sentence that takes account of a defendant's personal history, a judge has discretion to weigh 'many factors which would not be relevant at trial,' including the defendant's behavior, background, family life, character, history, and employment."  Commonwealth v. Plasse, 481 Mass. 199, 205 (2019), quoting Commonwealth v. Goodwin, 414 Mass. 88, 92 (1993).  A "[j]udge[] may not punish the defendant for offenses of which he or she does not stand convicted in the particular case," Commonwealth v. Healy, 452 Mass. 510, 515 (2008), but may consider the defendant's prior criminal record "to inform as to a number of relevant sentencing factors such as his character, dangerousness, and amenability to rehabilitation."  Commonwealth v. White, 48 Mass. App. Ct. 658, 663 (2000).

11

Here, the trial judge properly considered the defendant's 2004 conviction as a factor at sentencing.  See Commonwealth v. LaPointe, 435 Mass. 455, 457 (2001) ("Before imposing the defendant's sentence, the judge stated that he had considered numerous factors, including . . . the defendant's prior conviction").  Given that the record in front of the judge stated that the defendant was convicted in 2004 for a "Firearm ID Card" crime, it was understandable that the judge described the conviction as a "firearms offense."  See Commonwealth v. Privette, 491 Mass. 501, 505-506 n.5 (2023) ("indictments charg[ed] the defendant with five firearms offenses" including "possession of ammunition without a firearm identification card, G. L. c. 269, § 10 [h]").  This description does not establish that the judge's understanding of this conviction was incorrect, nor is there any reason to believe that the experienced trial judge was unfamiliar with the limited amount of information available to her.[3]

In any event, the precise nature of the defendant's 2004 conviction was not a significant factor at sentencing.  In March 2005, the defendant was arraigned on charges of unlawfully

---

[3] Although the defendant does not specifically argue that trial counsel was ineffective in failing to inform the judge that the 2004 conviction involved a single bullet, whether that conviction involved a single bullet or a gun would not have made a difference at sentencing.

carrying a firearm and unlawfully possessing ammunition. A month later, he walked into a bar with a firearm and shot three people. In expressing concern that the defendant "refuse[d] to stay away from guns," the judge sentenced the defendant for his behavior at the bar, which resulted in serious injuries to three people and could easily have resulted in multiple deaths. See Commonwealth v. Holness, 93 Mass. App. Ct. 368, 375 (2018) ("judge's comments during sentencing show that she considered the nature of the offenses and the circumstances surrounding the defendant's crimes in fashioning an appropriate sentence"). Nothing in the record suggests that the judge would have sentenced the defendant differently whether she understood that his conviction from seven months earlier was for possessing a gun or for possessing a bullet. Accordingly, there was no prejudicial error in the judge's treatment of the defendant's 2004 conviction at sentencing.

Order dated January 31, 2022, denying motion for new trial affirmed.

By the Court (Massing, Ditkoff & Singh, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: August 8, 2023.

_____

[4] The panelists are listed in order of seniority.