NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-19

COMMONWEALTH

vs.

MARTIN D. MCDONALD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court on an indictment charging him with murder in the first degree, the defendant was found guilty of the lesser included offense of voluntary manslaughter. At trial, there was no dispute that on the evening of January 27, 2016, the defendant fatally beat and stabbed his wife at their home in front of their two children, his stepdaughter, and niece. The defendant also assaulted his stepdaughter, who had intervened and attempted to help her mother. The defendant then drove away in his truck and was speeding on Route 495 when he crossed over the median and collided with a car driven by Kathryn Degnan. In addition to the conviction of manslaughter, the defendant was convicted of assault and battery and intimidation of a witness against his stepdaughter, assault and battery by means of a dangerous weapon

(motor vehicle) causing serious bodily injury to Degnan, and operating a motor vehicle to endanger.

On appeal, the defendant challenges the sufficiency of the evidence of serious bodily injury to Degnan. He further argues that the judge improperly denied his request to represent himself at trial and impermissibly considered the murder of which he was acquitted in imposing sentences on the charges of which he was convicted. We affirm.

Background. Given the issues raised on appeal, we need not recite the facts pertaining to the wife's death in detail. It suffices to note that the defendant testified at trial that he had an argument with his wife during which she acknowledged that she was in love with another man. The defendant then packed some clothes and was leaving the home when his wife punched him and he "felt like his brain explode[d]." Although the defendant admitted that he killed his wife, he contended that he was not guilty of murder because he was in an altered mental state due to, among other things, his consumption of alcohol and Percocet earlier that day and his overuse of prescribed testosterone medication.

Because the defendant challenges the sufficiency of the evidence with respect to the conviction involving Degnan, we review the evidence supporting that conviction in more detail. The defendant testified that he was depressed and upset when he

2

left the house after killing his wife and wanted to end his life. There was evidence that the defendant was driving over one hundred miles per hour on Route 495 before he made an abrupt turn, crossed over the median, and hit Degnan's car head on causing it to roll over multiple times before it stopped upside down. One witness described Degnan's car as "completely obliterated." Degnan managed to call the police and crawl out of her car. She was bleeding, bruised, and her mouth was full of broken glass. An ambulance transported Degnan to the hospital where she was treated for her injuries. Several of Degnan's teeth were chipped, and she had whiplash which caused severe pain in her back, neck and shoulders, and jaw. In addition, within a few days of the accident, Degnan was diagnosed with a concussion. At the time of trial, Degnan had lingering pain and recurring headaches. She had three surgeries to repair the damage to her jaw but continued to experience discomfort.

Discussion. 1. Sufficiency of the evidence. The defendant contends that the evidence was insufficient to prove beyond a reasonable doubt that Degnan suffered a "serious bodily injury," as defined in G. L. c. 265, § 15A (d). "In reviewing a denial of a motion for a required finding of not guilty, our inquiry is whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to satisfy a

3

rational trier of fact that the essential elements of the crime have been proven beyond a reasonable doubt."  Commonwealth v. Vazquez, 69 Mass. App. Ct. 622, 626 (2007).  "In satisfying that test, the Commonwealth may rely on reasonable inferences drawn from circumstantial evidence."  Id., quoting Commonwealth v. Degro, 432 Mass. 319, 325 (2000).

General Laws c. 265, § 15A (d), defines the element of serious bodily injury in three ways:  bodily injury resulting in 1) "a permanent disfigurement," 2) "loss or impairment of a bodily function, limb or organ," or 3) "a substantial risk of death."  The three alternative definitions do not establish distinct "theories of guilt," or different ways of committing the crime, but rather set forth "related ways of proving" the element of serious bodily injury.  Commonwealth v. Inoa, 97 Mass. App. Ct. 262, 264-265 (2020).  Accordingly, "a reviewing court need not examine the evidence separately as to each definition of serious bodily injury in G. L. c. 265, § 15A (d), to uphold a conviction against a sufficiency challenge.  What is required is that there be sufficient evidence of serious bodily injury under at least one of the definitions."[1]  Inoa, supra at 265-266.  Here, the evidence of injuries to Degnan's teeth and

_____

[1] Because the Commonwealth did not proceed on alternative theories, the defendant's reliance on Commonwealth v. Plunkett, 422 Mass. 634 (1996), is misplaced.

4

jaw was sufficient to establish serious bodily injury under either of the first two definitions.

A permanent disfigurement is defined as "a significant and enduring injury that affects the appearance or the character of a person's bodily integrity." Commonwealth v. Heywood, 484 Mass. 43, 50 (2020). Additionally, "[a]lthough the trier of fact certainly may consider visible evidence, the fact that an injury can be or was concealed or repaired does not preclude a finding of permanent disfigurement." Id.

Degnan testified that, after the accident, she had "one bigger chip, but then, in the back [of her mouth] . . . a few smaller ones" and that her teeth were not chipped prior to the crash. The defendant asserts that because the Commonwealth did not introduce expert testimony or dental records to corroborate Degnan's testimony, the Commonwealth failed to meet its burden. However, "medical testimony may not be required in every instance to establish that a victim has suffered serious injury." Commonwealth v. Scott, 464 Mass. 355, 364 (2013). Here, the absence of such evidence did not entitle the defendant to a required finding of not guilty. Rather, the jury could have assessed the evidence based on their ordinary and common experience and concluded that Degnan's chipped teeth resulted in a permanent disfigurement. Commonwealth v. Beal, 474 Mass. 341, 346 (2016).

Similarly, Degnan's testimony regarding the injury to her jaw satisfied the Commonwealth's burden of proving the loss or impairment of a bodily function. Such loss occurs "when a part or system of the body (other than an organ or limb) is significantly impeded in its ability to fulfil its role." Scott, 464 Mass. at 359. An impairment of a bodily function need not be permanent or life threatening to qualify as a serious bodily injury. See, e.g., Commonwealth v. Marinho, 464 Mass. 115, 118-119 (2013).

Degnan testified, "I remember my back hurt, my hip hurt, my neck. The whiplash was, like, into my shoulders, into my neck, and was also causing a lot of jaw pain." She further explained that her "jaw never stopped hurting" and, eventually, she underwent three surgeries in an effort to re-set her jaw and alleviate the pain. The Commonwealth also introduced Degnan's medical records relating to the surgeries and treatment of her jaw.[2] Based on Degnan's testimony, as corroborated by the medical records, the jury could reasonably have concluded that the continued pain in Degnan's jaw significantly interfered with

_____

[2] Although some parts of the medical records may have been beyond the understanding of lay jurors, the records also included narrative descriptions that were readily accessible. While "[m]edical records containing technical terminology that require jurors to speculate on the meaning of key terms will be insufficient, without more," to prove serious bodily injury, Scott, 464 Mass. at 364, here the records were sufficient to corroborate Degnan's testimony.

her ability to properly use it. While it is true, as the defendant notes, that Degnan testified that she previously had problems with her jaw alignment,[3] she also testified that those problems were exacerbated by the injuries she sustained from the collision. Accordingly, evidence of any preexisting conditions did not preclude the jury from finding beyond a reasonable doubt that Degnan suffered an impairment of a bodily function.

2. Denial of right to proceed pro se and request to appoint standby counsel. Two weeks before the scheduled trial date, the defendant filed an emergency motion to continue the trial and appoint new counsel. The motion stated that the defendant was "dissatisfied with the representation he has been receiving" and that "there [were] irreconcilable differences between client and counsel." The trial judge held a hearing on the motion at which the defendant and counsel addressed the court. At the conclusion of the hearing, the judge denied the motion.[4] Just before the court adjourned, the defendant inquired about his right to represent himself and about the possibility of having the assistance of standby counsel.

---

[3] Degnan explained that she has had problems with her jaw because of "the way [her] jaw was formed" at birth and that her "jaw used to always click."

[4] The judge issued written findings within a few days of the hearing.

7

Although the defendant never again raised the question of proceeding pro se or being assisted by standby counsel, he now claims that his constitutional rights were violated because the judge failed to fully apprise him of his right to represent himself or have standby counsel appointed.

"It is not disputed that a defendant has a right, one protected by both the Federal and State Constitutions, to proceed pro se with respect to his defense against criminal charges." Commonwealth v. Myers, 51 Mass. App. Ct. 627, 628 (2001). However, "[a] request that present counsel be discharged does not by itself constitute a demand to be permitted to proceed pro se. '[T]he criminal defendant must make an unequivocal request to act as his own lawyer in order to invoke the right'" (citation omitted). Id. at 628-629.

Here, the judge explicitly found that the defendant did not make an unequivocal request to proceed pro se. As the judge noted in his written findings, the defendant did not move to represent himself, but rather inquired about his right to do so. The judge further explained: "it [was] clear from [the defendant's] motion to appoint new counsel and from his remarks at the motion hearing, that he desire[d] to be represented by counsel. He [did] not voluntarily and intelligently waive[] the right to counsel." Ultimately, the judge concluded that the

8

defendant's inquiry was "a ploy intended to prevent the trial from proceeding against [the defendant's] wishes."

The defendant asserts that once he raised the issue of proceeding pro se, the judge was required to conduct a "meaningful" colloquy before "summarily denying [his] constitutional right to proceed pro se."  Contrary to the defendant's assertion, the judge was not required to conduct a colloquy.  The defendant did not press the issue and never indicated that he wished to represent himself.  Furthermore, given the age of the case and the fact that the defendant had already changed counsel once, the judge was warranted in finding that the defendant was not genuinely requesting to represent himself, but rather was attempting to delay the trial.  In sum, these circumstances did not obligate the judge to question the defendant further.  See Myers, 51 Mass. App. Ct. at 628-629.

The defendant's alternative argument, that the judge should have considered appointing standby counsel, is equally unavailing.  Apart from the fact that a defendant does not have a constitutional right to standby counsel, see Commonwealth v. Molino, 411 Mass. 149, 152-154 (1991), the defendant did not request the appointment of standby counsel.  Additionally, the defendant's comment, that he would need "a new co-counsel or standby attorney that's not [current appointed counsel]" cannot

9

be reasonably interpreted as making a request to proceed pro se with the assistance of standby counsel.

Lastly, to the extent that the defendant argues that his motion to appoint new counsel should have been allowed, he fares no better. The defendant has the burden of showing good cause to remove appointed counsel, see Commonwealth v. Chavis, 415 Mass. 703, 712 (1993), and the decision "to honor a defendant's request for change of appointed counsel is a matter left to the sound discretion of the trial judge." Commonwealth v. Moran, 388 Mass. 655, 659 (1983). We note that the defendant was given an opportunity to explain the reasons for his dissatisfaction with counsel. Notwithstanding the defendant's concerns, the judge concluded that because counsel was prepared to try the case, counsel was a highly regarded defense attorney (described by the judge as "an excellent attorney") who had actively engaged in motion practice on behalf of the defendant for the prior four and one-half years, and the defendant had never before made any complaint about counsel's representation, none of the proffered reasons was sufficient to meet the defendant's burden. Moreover, as previously noted, the judge believed, with good reason, that the defendant was engaging in dilatory tactics. Given these circumstances, the judge did not abuse his discretion.

10

3. Sentencing. The defendant claims that the sentence imposed was excessive and, as such, demonstrates that the judge did not sentence him for the crimes of which he was convicted but improperly punished him for the crime of murder. He also argues that the judge was unduly influenced by the victim impact statements presented before sentence was imposed. Because the defendant appealed his sentence to the Appellate Division of the Superior Court, which dismissed his appeal, our review is for "errors of law or constitutional violations." Commonwealth v. Grimshaw, 412 Mass. 505, 513 (1992). Neither an error of law nor a constitutional violation occurred here.

"A sentencing judge has great discretion within the statutorily prescribed range to fashion an appropriate[,] individualized sentence" (quotations and citation omitted). Commonwealth v. Holness, 93 Mass. App. Ct. 368, 375 (2018). At the same time, "[a] sentencing judge may not undertake to punish the defendant for any conduct other than that for which the defendant stands convicted in the particular case." Id., quoting Commonwealth v. LeBlanc, 370 Mass. 217, 221 (1976). In this case, the judge imposed an aggregate prison term of from thirty-five to forty-five years, which exceeded the Commonwealth's recommendation of an aggregate term of from

11

twenty-nine to thirty-five years.[5]  The judge explained his

reasons for the sentence he imposed as follows:

> "I think the only word for this case is heartbreaking.  The
> pain that's been inflicted is enormous and almost
> incomprehensible.  It's something no one should have to go
> through.  There have been many, many victims of this
> offense.  There are three that are named in the
> indictments, and there's going to be a separate sentence on
> each of those three."

These comments do not suggest that the judge considered

improper factors as the defendant claims.  Rather, the comments

show that the judge properly considered "the nature of the

offense[s] and the circumstances surrounding the commission of

the crime[s]" by imposing separate sentences on each charge that

involved a different victim.  See Holness, 93 Mass. App. Ct. at

375, quoting Commonwealth v. Jones, 71 Mass. App. Ct. 568, 572

(2008).  Furthermore, despite exceeding the Commonwealth's

recommendation, the sentences fell within the ranges permitted

by statute.  Nor are we persuaded that the judge punished the

defendant for committing murder, a charge for which he was

acquitted.  To the contrary, the judge relied on legally

---

[5] Specifically, the judge sentenced the defendant to a term of from eighteen to twenty years on the conviction of manslaughter, a consecutive term of from seven to ten years on the conviction of witness intimidation, and a third consecutive term of from ten to fifteen years on the conviction of assault and battery by means of a dangerous weapon causing serious bodily injury.  The judge imposed concurrent house of correction sentences on the assault and battery and operating a motor vehicle to endanger convictions.

acceptable criteria in imposing consecutive sentences.  Lastly, although it was clear from the victim impact statements that the defendant's conduct exacted a significant emotional toll, we are confident that the judge was not swayed by emotion or other improper considerations.

Judgments affirmed.

By the Court (Vuono, Massing & Toone, JJ.[6]),

Paul Little

Clerk

Entered:  September 4, 2024.

---

[6] The panelists are listed in order of seniority.